UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
CLAREX LIMITED and BETAX LIMITED,                                       :
                                                                        :    12 Civ. 0722 (PAE)
                                              Plaintiffs,               :
                          -v-                                           :    OPINION & ORDER
                                                                        :
NATIXIS SECURITIES AMERICA LLC et al.,                                  :
                                                                        :
                                              Defendants.               :
                                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Clarex Limited ("Clarex") and Betax Limited ("Betax") (collectively, "plaintiffs"), companies operating in Nassau, Bahamas, bring this action, alleging that defendants Natixis Securities America LLC and its predecessors (collectively, "Natixis"), Delaware corporations operating in New York, New York, violated their contractual and fiduciary duties. Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion to dismiss based on Rule 12(b)(1) is granted.

## I.  Background[1]

### A. Pre-Lawsuit Events

Sometime prior to November 1, 2002, plaintiffs purchased $46 million in Nigerian bonds from Natixis. First Amended Complaint ("Compl.") ¶ 13. Pursuant to industry practice at the time, one "warrant" was supposed to accompany each $1,000 worth of issued bonds. *Id.* ¶ 6.

---

[1] The facts which form the basis of this Opinion are drawn from the First Amended Complaint and from affidavits submitted with the parties' briefs. On a motion to dismiss, the Court accepts all factual allegations in the First Amended Complaint as true. In addition, it is appropriate to consider the parties' affidavits in deciding a motion to dismiss under Rule 12(b)(1), because the Court may consider evidence outside the pleadings. *See infra* p. 4.

These warrants were guaranteed by the Government of Nigeria and provided the holder with the prospect of semi-annual payments. *Id.* ¶ 7. To date, Nigeria has paid out, to the holders, a total of $10,080,996.46 in payment rights on the warrants. *Id.* ¶ 24. As of January 2012, the bonds had a market value of $8,924,000. *Id.*

In August 2007, plaintiffs assigned all claims in connection with the purchase of the warrants to an affiliated company, Landsdowne Investments Inc. ("Landsdowne"). *Id.* ¶ 19; Declaration of Eric. R. Levine ("Levine Decl.") Ex. B. On August 21, 2007, Landsdowne filed a complaint against Natixis in the United States District Court for the Southern District of New York, alleging breach of contract and negligence in connection with Natixis's alleged failure to deliver the warrants. Levine Decl. Ex. D. On January 15, 2008, Landsdowne voluntarily dismissed that case. Levine Decl. Ex. E.

### B. Plaintiff's Initial Complaint and Landsdowne's Subsequent Reassignment of the Bonds to Them

On January 30, 2012, plaintiffs filed their original Complaint in this case. Dkt. 1.[2] Plaintiffs alleged that Natixis's failure to deliver the warrants constituted a breach of contract, a breach of the duty of good faith and fair dealing, and negligence. *Id.* ¶¶ 20–35.

On April 2, 2012, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. 12. In that motion, Natixis argued, *inter alia*, that plaintiffs did not have standing, because Landsdowne (not plaintiffs) had filed the prior suit seeking similar relief, and because the Complaint here did not "allege that Plaintiffs are the current owners of the claim." Dkt. 14 at 6.

---

[2] There is no claim here that the statute of limitations has run. Clarex, Betax, and Natixis have entered into a series of tolling agreements covering the period of August 2007 through January 2012. *See* Declaration of Peter N. Turnquest ("Turnquest Decl.") Exs. B–C.

[2]

Ten days later, on April 12, 2012, Landsdowne executed a contract that assigned the bonds back to Clarex and Betax. That assignment, however, purported to be effective, retroactively, as of December 15, 2011. Levine Decl. Ex. F.

### C. Amended Complaint and Motion to Dismiss

On April 23, 2012, plaintiffs exercised their option, available under this Court's individual rules, to file an Amended Complaint in response to defendant's motion to dismiss. Dkt. 15. The causes of action in the Amended Complaint are unchanged from the original Complaint, Compl. ¶¶ 25–44; however, plaintiffs added several paragraphs chronicling the history of the assignments and reassignments of the claims, *id.* ¶¶ 19–23, including the April 12, 2012 assignment back to plaintiffs.

On May 30, 2012, Natixis filed a motion to dismiss the First Amended Complaint, again pursuant to Rules 12(b)(1) and 12(b)(6). Dkt. 18–20. On June 29, 2012, plaintiffs filed an opposition brief. Dkt. 21–24. On July 18, 2012, Natixis filed a reply. Dkt. 26.

Natixis moves to dismiss the First Amended Complaint on four grounds, namely that: (1) plaintiffs did not have standing at the time they filed the initial complaint, and therefore this Court lacks subject matter jurisdiction, Def. Br. 7–12; (2) Natixis's relationship with plaintiffs was that of a broker and it did not breach any duties of a broker, *id.* at 12–17; (3) plaintiffs' claims for breach of contract and breach of good faith are duplicative, *id.* at 17–19; and (4) plaintiffs' claims for breach of contract and negligence are duplicative. *Id.* at 19–21. Natixis also moves to strike plaintiffs' demand for damages to the extent they exceed the market value of the warrants at the time of the alleged breach. *Id.* at 21–24.

## II.     Legal Standards

Once subject matter jurisdiction is challenged, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *see also Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 130 S. Ct. 2869 (2010).  In addition, a district court may consider evidence outside the pleadings, such as affidavits and exhibits.  *See Makarova*, 201 F.3d at 113.

When standing is at issue, "[e]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  "Because standing is challenged [here] on the basis of the pleadings, we [therefore] accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* at 225 (alterations in original) (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Accordingly, in considering a motion to dismiss, a district court "must accept as true all well-pleaded factual allegations in the complaint, and 'draw[] all inferences in the plaintiff's favor.'"  *Brown v. Kay*, No. 11 Civ. 7304 (PAE), 2012 WL 408263, at *7 (S.D.N.Y. Feb. 9, 2012) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).

### III.  Discussion

#### A.  The Standing Requirement

The Court first considers Natixis's argument to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.  *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." (citation omitted)); *Wong v. CKX, Inc.*, No. 11 Civ. 6291 (JGK), 2012 WL 3893609, at *1 (S.D.N.Y. Sept. 10, 2012) ("[T]he Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action." (citation omitted)).

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (internal citation omitted) (quoting *Makarova*, 201 F.3d at 113). Standing is a proper ground upon which to challenge a court's subject matter jurisdiction:  "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw.*

[5]

*Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("Generally, '[s]tanding is a federal jurisdictional question determining the power of the court to entertain the suit.'" (quoting *Carver*, 621 F.3d at 225)). "In particular, 'a plaintiff must demonstrate standing for each claim and form of relief sought.'" *Mahon*, 683 F.3d at 62 (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n. 15 (2d Cir. 2003)).

"In order to have standing to bring suit, a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61 and *Port Wash. Teachers' Ass'n v. Bd. of Educ.*, 478 F.3d 494, 498 (2d Cir. 2007)); *accord Cacchillo*, 638 F.3d at 404 (requiring the "three familiar elements of standing: injury in fact, causation, and redressability." (citing *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009))).

### B.  Analysis of Plaintiffs' Claim to Have Standing

Here, Natixis challenges plaintiffs' standing on the ground that Clarex and Betax were not the owners of the warrants on January 30, 2012, the date the initial complaint in this case was filed, and therefore did not suffer from an actual injury at that time. *See* Def. Br. 7–9.

Plaintiffs respond by asserting that (1) the reassignment from Landsdowne actually occurred on December 15, 2011, and plaintiffs therefore did own the warrants as of January 30, 2012; (2) even if plaintiffs did not own the shares on January 30, 2012, the "ultimate ownership" of the warrants always belonged to The Bank of Nova Scotia Trust Company (Bahamas) Limited ("Scotiatrust"), the common parent bank that owns and manages Clarex, Betax, and Landsdowne; and (3) even if this claim is rejected, the appropriate remedy is not to dismiss, but

to allow the real party in interest to ratify under Fed. R. Civ. P. 17.  Pl. Br. 6–12.  The Court considers these issues in turn.

### 1.  Whether Plaintiffs Owned the Warrants at the Time of Filing

It is axiomatic, and plaintiffs do not contest, that "'standing is to be determined as of the commencement of suit.'" *Fenstermaker v. Obama*, 354 F. App'x 452, 455 n.1 (2d Cir. 2009) (quoting *Lujan*, 504 U.S. at 571 n.5); *see Comer v. Cisneros*, 37 F.3d 775, 791 (2d Cir. 1994) ("These constitutional minima [of injury, causation, and redressability] are assessed as of the time the lawsuit is brought." (citation omitted)); *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS), 2012 WL 3584278, at *5 (S.D.N.Y. Aug. 17, 2012).  Because lack of standing is a jurisdictional defect, a corollary of this rule is that courts cannot consider any amendments to the initial complaint or any post-filing assignments to plaintiffs to determine whether plaintiffs have standing.  *Fenstermaker*, 354 F. App'x at 455 n.1.

In order to determine whether Clarex and Betax had standing at the time of suit, the Court must consider the series of assignments between plaintiffs and Landsdowne, in particular:  (1) the effect of their August 2007 assignment to Landsdowne; (2) whether a reassignment from Landsdowne back to plaintiffs actually occurred before the suit was filed, on December 15, 2011, as plaintiffs claim; and (3) the effect, if any, of the April 12, 2012 assignment to plaintiffs.

All parties agree that the 2007 assignment was effective.  Def. Br. 6; Pl. Br. 6; Turnquest Decl. ¶¶ 13–15.[3]  It is therefore undisputed that between August 2007 and December 2011, Landsdowne was the owner of the claims at issue.  The decisive question is, then, whether the reassignment to Clarex and Betax occurred on December 15, 2011, the date recited as the

---

[3] Turnquest is an Associate Director of Scotiatrust, who is principally responsible for Scotiatrust's management of Clarex and Betax.

effective date of the reassignment, or April 12, 2012, the date the reassignment contract was signed.

Arguing that "Scotiatrust caused Landsdowne to re-assign the claims to Clarex and Betax, orally and by conduct, in December 2011, and documented that assignment, in writing, in April 2012," plaintiffs rely on (1) an affidavit from Peter Turnquest, and (2) a string of emails from December 2011. Pl. Br. 7. In particular, Turnquest claims that "as of December 15, 2011, we had already effected the assignments from Landsdowne to Clarex and Betax." Turnquest Decl. ¶¶ 22–23. Plaintiffs claim the emails corroborate such an assignment. Turnquest Decl. Ex. D.

Plaintiffs assert that the Court must "assume the truth of the facts alleged in [their] complaint, as well as those supplemented in [their] affidavits." Pl. Br. 7 (citing *Fair Housing in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 361–62 (2d Cir. 2003)). However, although the Court "'may consider affidavits and other materials beyond the pleadings'" in deciding a 12(b)(1) motion, it "'may not rely on conclusory or hearsay statements contained in the affidavits.'" *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568, 580–81 (S.D.N.Y. 2010) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)); *see also Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) ("It is well established that we need not 'credit a complaint's conclusory statements without reference to its factual context.'" (quoting *Iqbal*, 556 U.S. at 665)). The standard here is one of plausibility. *See id.* ("[F]or Amidax to have standing to sue, its alleged injury in fact must be plausible.").

Here, the assembled evidence does not plausibly or persuasively show that the reassignment from Landsdowne actually occurred on December 15, 2011. The emails which

plaintiffs attach reflect that, in December 2011, they gave notice to their counsel that they intended to sue Natixis through Clarex and Betax rather than Landsdowne.  *See* Turnquest Decl. Ex. D at 2.  However, revealingly, these emails do not mention a reassignment or suggest that one had occurred.  Plaintiffs, in fact, do not supply *any* contemporaneous evidence of a December 2011 reassignment.  The emails do reflect a statement by Turnquest, expressing his belief that Clarex and Betax had an "ownership interest in the Nigeria Call Warrants." *Id.* at 1.  However, Turnquest's subjective belief alone is insufficient to effect a reassignment.  The fact of the April 12, 2012, contract reassigning claims back to plaintiffs suggests, if anything, that Turnquest's subjective belief in December 2011 as to who owned the warrants was wrong.[4]  Turnquest's uncorroborated statement as to his subjective belief, therefore, cannot carry the day.

The Court, accordingly, finds that there is insufficient evidence to establish that the claims to the warrants were reassigned to Clarex and Betax in December 2011, or for that matter, at any point prior to April 12, 2012.

### 2.  Whether Plaintiffs, as Assignors, Retain Standing

Plaintiffs argue next that the 2007 assignment "conveyed only the *claims* on the Warrants, and did not affect the underlying ownership of the Warrants."  Pl. Br. 8 (emphasis in original).  In support of this argument, plaintiffs rely on *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008).  But *Sprint* is inapposite.  It holds only that "[l]awsuits by assignees, including assignees for collection only, are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Id.* at 285 (citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 777–78 (2000)).  Here, however, as of

---

[4] Plaintiffs' emails also state that "[t]he assignment to Landsdowne never materialized nor would it really prove to be an advantage to go in that direction." Turnquest Decl. Ex. D at 2.  This language, however, cannot undo the 2007 assignment, which all parties agree was effective.

January 30, 2012, *Landsdowne* was the assignee. Thus, Landsdowne, as assignee, would have had standing to bring this claim on January 30, 2012. But it was not Landsdowne that brought this suit. *Accord Abu Dhabi Commercial Bank*, 2012 WL 3584278, at *5 (assignee who held legal title at time suit was brought had standing to do so).

As *assignors*—and that was the role plaintiffs held as of January 30, 2012—Clarex and Betax had no interest in this litigation at the filing date. Plaintiffs had conferred the right to seek redress of the non-delivery injury to Landsdowne, and thus, until the point at which the reassignment was made to them in April 2012, plaintiffs did not have standing to bring suit against Natixis. *See Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586 (LAK), 2011 WL 6811018, at *4 (S.D.N.Y. Dec. 28, 2011) ("Having assigned any 'right' or 'interest' it had in the payments made pursuant to the Contract to FRG LLC, FRG Corp. plainly lacks standing to initiate a law suit for return of those payments."); *see also Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999) (summary order) ("Where the assignment of an exclusive right under a copyright expressly includes the right to prosecute accrued claims for infringement, that right passes to the assignee. It follows that the assignor would no longer have standing to prosecute such claims."); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor.").

Nor may plaintiffs deny that their assignment to Landsdowne was a complete and unequivocal assignment of the claims. The language of the contract reads:

> Now, therefore, the assignor, in consideration of the assignee's acceptance of this assignment and for other good and valuable consideration, hereby grants, assigns, conveys, transfers, and sets over, unto the assignee, its successors and assigns any

and all claims which it now holds against [Natixis] for the losses set forth above . . . .

Levine Decl. Ex. B. By its terms, the assignment was thus not merely security for antecedent debt, which would allow the assignor to retain standing to sue. *Cf. RBS Holdings, Inc. v. Gordon & Ferguson, Inc.*, No. 06 Civ. 6404 (HB), 2008 WL 782616, at *2–3 (S.D.N.Y. Mar. 26, 2008). Instead, it fully transferred to Landsdowne both the claim and the right to be paid on that claim. *See* Levine Decl. Ex. B ¶ 4 ("Assignor agrees . . . that in the event any payment under the claim is make to assignor, assignor will promptly transmit such payment to assignee."). The assignment to Landsdowne, therefore, deprived Clarex and Betax of standing to sue Natixis with regard to the warrants, until such future time as a reassignment back to them took place. *Accord W.R. Huff*, 549 F.3d at 108 ("In our view, *Sprint* makes clear that the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim.").

### 3. Whether Plaintiffs Are Saved by Common "Ultimate Ownership"

In a final argument, plaintiffs assert that because Clarex, Betax, and Landsdowne are all owned and managed by the same bank (Scotiatrust) for the benefit of the same client, "beneficial ownership" has not changed, "regardless of which corporate vehicle Scotiatrust used to purchase the Bonds or assert the claims." Pl. Br. 8. That argument is wrong as a basis to establish standing. Corporate form matters. Here, there were distinct legal entities, whose separate nature cannot simply be ignored when inconvenient. It is black-letter law that one corporation cannot assert an affiliate's legal rights. *See, e.g.*, *Hudson Optical Corp. v. Cabot Safety Corp.*, No. 97–9046, 1998 WL 642471, at *3 (2d Cir. Mar. 25, 1998) (summary order) (a subsidiary is a "separate corporation," and thus the parent company "has no standing to assert [the subsidiary's] legal rights"); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 420 (S.D.N.Y. 2011) (plaintiff which sued based on the injuries of its subsidiary lacked standing to

[11]

do so); *Diesel Sys., Ltd. v. Yip Shing Diesel Eng'g Co.*, 861 F. Supp. 179, 181 (E.D.N.Y. 1994) ("A corporation does not have standing to assert claims belonging to a related corporation, simply because their business is intertwined."); *Lyman Rice, Inc. v. Albion Mobile Homes, Inc.*, 89 A.D.3d 1488, 1488 (4th Dep't 2011) ("[O]ne [company] will generally not have the legal standing to exercise the rights of [an]other associated corporation[]." (alterations in original) (quoting *Alexander & Alexander of N.Y. Inc. v. Fritzen*, 114 A.D.2d 814, 815 (1st Dep't 1985))).

The Court, accordingly, finds that plaintiffs lacked standing to bring the lawsuit, as of the date it was brought, January 30, 2012.

### C.  Remedy

#### 1.  Fed. R. Civ. P. 17(a)(3) is Not Applicable

Plaintiffs argue that even if they did not have standing at the time the original Complaint was filed, the appropriate remedy is to allow Landsdowne to ratify the lawsuit by plaintiffs or to be substituted into this action as the real party in interest under Rule 17.  Pl. Br. 9–12.  Plaintiffs rely primarily on *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997), which states that "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants."

> Rule 17(a)(3) of the Federal Rules of Civil Procedure reads:
>
> *Joinder of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).

To be sure, there have been cases in which courts in this Circuit have used Rule 17(a) to cure standing deficiencies. *See, e.g.*, *Kotbi v. Hilton Worldwide, Inc.*, No. 11 Civ. 3550 (TPG), 2012 WL 914951 (S.D.N.Y. Mar. 19, 2012) (allowing substitution of plaintiff's bankruptcy estate where parties agreed that plaintiff lacked standing); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 773–74 (S.D.N.Y. 2011) (collecting cases); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 583–85 (S.D.N.Y. 2009) (allowing lack of standing to be cured through Rule 17(a)). This case, however, is distinguishable, because unlike in those cases, neither of the plaintiffs here had Article III standing on *any* of their claims as of the date the original Complaint was filed.

As the Second Circuit has emphasized, "Rule 17 does not . . . affect jurisdiction and relates only to the determination of proper parties and the capacity to sue." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193–94 (2d Cir. 2003). Thus, "[w]hile Rule 17(a) allows for the substitution of a real party in interest, a plaintiff must have 'Article III standing at the outset of the litigation.'" *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 115 (S.D.N.Y. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *cf. Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012) (noting, in the context of intervention, that the Second Circuit has "long recognized that 'if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim'" (quoting *Pressroom Unions–Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983))). This is consistent with the Supreme Court's teaching that Rule 17(a) "address[es] party joinder, not federal-court subject-matter jurisdiction." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 82 (2005).

For this reason, where courts in this Circuit have used of Rule 17(a)(3) to remedy defects in standing, they have generally done so where the plaintiff clearly had standing on another claim that it brought. *See In re SLM Corp. Sec. Litig.*, 258 F.R.D. at 115 ("To the extent courts allow assignment of a claim after litigation commences, the plaintiff generally has Article III standing on at least one other claim at the time the action was filed."); *see also id.* (distinguishing *Advanced Magnetics* and collecting cases). In *Advanced Magnetics*, for example, on which plaintiffs rely, the plaintiff corporation brought the action on behalf of itself and its shareholders, but only had standing for its own claims and not for those of its shareholders. *Advanced Magnetics*, 106 F.3d at 14–21. In that situation, the Second Circuit held that substitution was appropriate as to the latter claims. The salient point is that the plaintiff corporation had already established its standing as to its own claims.

Here, by contrast, all of plaintiffs' claims arise from the warrants, which plaintiffs had assigned away before the time the original complaint was filed. Therefore, plaintiffs did not have standing on *any* claim as of January 30, 2012. The Court thus has no jurisdiction to grant a request to substitute the real party in interest (as of January 30, 2012, Landsdowne) under Rule 17(a)(3). "Rule 17 cannot expand the Court's jurisdiction." *Bd. of Managers of Mason Fisk Condo. v. 72 Berry St., LLC*, 801 F. Supp. 2d 30, 39 (E.D.N.Y. 2011).

Notably as well, the cases that have utilized Rule 17(a) to cure standing deficiencies, and on which plaintiffs rely, entailed real and putative plaintiffs who stood in different relationships to each other than do the plaintiffs and Landsdowne here. The cases involve, for example, a corporation and its shareholders, *Advanced Magnetics*, 106 F.3d at 13; or investment funds and

[14]

their investors, *In re Vivendi*, 605 F. Supp. 2d at 573–74.[5]  This case, however, involves separate corporations.  Although Clarex, Betax, and Landsdowne are all sister corporations, they are legally distinct.  Put differently, plaintiffs cannot strike a business deal midway through a litigation to reshuffle their respective rights, as a means of manufacturing standing where it was lacking entirely at the case's outset.

This approach comports with that taken in other Circuits.  *See, e.g.*, *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("In the area of patent infringement, this court has held that if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing, nor by the subsequent purchase of an interest in the patent in suit." (citation omitted)); *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531–32 (6th Cir. 2002) ("The Federal Rules of Civil Procedure cannot expand the subject matter jurisdiction of federal courts beyond the limits of U.S. Constitution. . . . [Rule 17(a)] must be read with the limitation that a federal district court must, at a minimum arguably have subject matter jurisdiction over the original claims.").

### 2. Prejudice

The Court finally notes that the dismissal ought not prejudice plaintiffs' ability to pursue their grievances against Natixis.  The dismissal is without prejudice, as it must be.  "[D]ismissals for lack of subject matter jurisdiction are not on the merits and are not accorded *res judicata*

---

[5] The Court in *In re Vivendi*, 605 F. Supp. 2d at 574–82, found that nearly all of the European investment funds had Article III standing under the Second Circuit's *Huff* exception, which "permit[s] '[t]rustees [to] bring suits to benefit their trusts; guardians ad litem [to] bring suits to benefit their wards; receivers [to] bring suit to benefit their receiverships; assignees in bankruptcy [to] bring suit to benefit bankrupt estates; [and] executors [to] bring suit to benefit testator estates.'"  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109–10 (2d Cir. 2008) (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 287–88 (2008)).

effect." *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) (citing *Exch. Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir. 1976)); *accord Small v. Nobel Biocare USA, LLC*, No. 06 Civ. 683 (NRB), 2012 WL 4017305 (S.D.N.Y. Sept. 7, 2012). The same is true for dismissals for lack of standing:

> Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1). The distinction is important because a typical dismissal under Rule 12(b)(6), *i.e.*, for failure to state a claim, is an adjudication on the merits with preclusive effect. Presenting and considering a challenge to lack of Article III standing under Rule 12(b)(1) avoids the needs to fashion a modified approach to a Rule 12(b)(6) motion that concerns standing.

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006) (citation omitted). And, under New York law, Clarex and Betax will be able to file a new complaint within six months even if the statute of limitations had run during the pendency of this action. N.Y. C.P.L.R. § 205(a); *see also Doyle v. Am. Home Prods. Corp.*, 583 F.3d 167, 171 (2d Cir. 2009); *Goldstein v. New York State Urban Dev. Corp.*, 13 N.Y.3d 511, 521 (2009) ("[C.P.L.R. § 205(a) is] founded upon the sound premise that a litigant is entitled to have one adjudication of the substance or merit of his cause where he has initiated a suit in time." (citation and quotation marks omitted)).

## CONCLUSION

Defendants' motion to dismiss the plaintiff's First Amended Complaint for lack of subject matter jurisdiction based on Rule 12(b)(1) is GRANTED, and the case is dismissed without prejudice. The Clerk of Court is directed to terminate the motions at docket numbers 14 and 19, and to close the case.[6]

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: October 12, 2012
       New York, New York

---

[6] Because the Court finds that it does not have subject matter jurisdiction to consider this case and dismisses the case under Rule 12(b)(1), the Court does not reach Natixis's additional arguments for dismissal.

[17]